**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 14 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES ex rel. STEPHEN YAGMAN, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> JAMES ELMER MITCHELL, in former official capacity and in present individual capacity; JOHN BRUCE JESSEN, in former official capacity and in present official capacity; MITCHELL JESSEN AND ASSOCIATES, and affiliates or corporate entities, <br><br> Defendants-Appellees. | No. 16-55346 <br><br> D.C. No. 2:14-cv-09771-DMG-PJW <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Submitted February 12, 2018[**]
Pasadena, California

Before: McKEOWN and WARDLAW, Circuit Judges, and QUIST,[***] District

---

[*]   This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]   The Honorable Gordon J. Quist, United States District Judge for the

Judge.

Stephen Yagman appeals the district court's dismissal of his claims against James Mitchell and John Jessen (collectively, "Defendants") under the False Claims Act, 31 U.S.C. § 3729 *et seq.* The district court dismissed Yagman's claims under the public disclosure bar, which withdraws a district court's jurisdiction over *qui tam* actions "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in a government report or the news media, "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information." *Id.* § 3730(e)(4)(A). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Yagman's purportedly novel allegations were indisputably "substantially the same allegations or transactions" that "were publicly disclosed" in government reports and the news media. *Id.* The term "transactions" has "a broad meaning," *Schindler Elev. Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 408 (2011), which we generally have defined as "facts from which fraud can be inferred," *United States ex rel. Mateski v. Raytheon Corp.*, 816 F.3d 565, 571 (9th Cir. 2016).

The public sources on which Yagman's complaint relies described in considerable detail the Defendants' participation in the CIA's interrogation program. *See, e.g., Committee Study of the Central Intelligence Agency's*

---

Western District of Michigan, sitting by designation.

*Detention and Interrogation Program*, S. REP. No. 113-288 (2014) (hereinafter "Senate Report") at xviii-xxi, 31–36, 40, 46, 65–66, 84. They discussed the extent and relevance of the psychologists' supposed "expertise" in "non-standard means of interrogation." *See id.* at xx–xxi, 21 & n.59, 32 & n.138; Memorandum from John O. Brennan to Sens. Dianne Feinstein & Saxby Chambliss, "CIA Comments on the Senate Select Committee on Intelligence Report on the Rendition, Detention, and Interrogation Program" (June 27, 2013) (hereinafter "CIA Response")[1] at 73. They debated the effectiveness of the interrogation techniques and whether the CIA knew that the techniques were ineffective. *See, e.g.*, Senate Report at xi–xii, 17–20, 172–400; CIA Response at 3–4, 18–21, 45–47, 84–136. And they discussed whether the CIA, including its contract psychologists, had performed either sufficient empirical research before the techniques were adopted or a comprehensive analysis of effectiveness after the program was operational. *See, e.g.*, Senate Report at xxii–xxiii, 20–21, 124–28; CIA Response at 13, 48–49. Most importantly, the CIA Response specifically referred to the "impracticality of establishing an effective control group." CIA Response at 48.

Yagman's complaint provided no additional details; rather, it openly acknowledged that the "information and bases for [Yagman]'s claims [were] set

---

[1] The CIA Response is available at https://www.cia.gov/library/reports/CIAs_June2013_Response_to_the_SSCI_Study_on_the_Former_Detention_and_Interrogation_Program.pdf.

3

forth in" various news articles and the declassified portions of the Senate Report, "all of whose contents [were] incorporated" by reference into the complaint. "Reading between the lines of the publicly disclosed information," there is more than enough in the publicly available materials to raise an inference of exactly the type of fraud that Yagman alleged. *Mateski*, 816 F.3d at 572.

Finally, even if Yagman's allegations are sufficiently specific to distinguish them from publicly available information, Yagman failed to establish that he is an "original source" of those allegations. *See* 31 U.S.C. § 3730(e)(4)(B) (an "original source" means "an individual . . . who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section"). Nowhere does Yagman's complaint claim to have voluntarily provided the information in his complaint to the Government before filing.

**AFFIRMED.**